Paul B. Nesbitt, Esq. (SBN 064432)
paul@nesbittlawllp.com
Todd A. Nesbitt, Esq. (SBN 245295)
todd@nesbittlawllp.com
**NESBITT & NESBITT, LLP**
9171 Wilshire Boulevard, Suite 400
Beverly Hills, California 90210-5516
Phone: (310) 777-0448
Facsimile: (310) 777-0441

Lauren J. Harrison, Esq.
lharrison@joneswalker.com
Daniel H. Purdie, Esq.
dpurdie@joneswalker.com
**JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE, L.L.P.**
First City Tower, Suite 2450
1001 Fannin Street
Houston, Texas 77002
Phone: (713) 437-1800
Facsimile: (713) 437-1810

Attorneys for Defendants FUNimation Productions, Ltd. d/b/a FUNIMATION Entertainment, Gen Fukunaga and Chris Moujaes

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMITH GLOBAL MANAGEMENT, INC., | CASE NUMBER: ___ |
| Plaintiff, | |
| vs. | **NOTICE OF REMOVAL** |
| GEN FUKUNAGA, FUNIMATION PRODUCTIONS, LTD, d/b/a/ FUNIMATION ENTERTAINMENT, FUNIMATION ENTERTAINMENT, INC. FUN MUSIC PROJECT, LLC and CHRIS MOUJAES, and DOES 1 THROUGH 25 | |
| Defendants. | |

{HD042749.1}    Notice of Removal - 1

Defendants Gen Fukunaga, FUNimation Productions, Ltd. ("FUNimation"), and Chris Moujaes ("Defendants"), in the above-styled matter, file this Notice of Removal, pursuant to the provisions of 28 U.S.C. §§1441 *et seq.* and 1332 and hereby remove this action from the Superior Court of California for the County of Los Angeles, Central District to the United States District Court for the Central District of California, Western Division. In support of this Notice of Removal, Defendants submit as follows:

1.

On November 20, 2012, Smith Global Management, Inc. ("SGM") filed a complaint against Defendants, in the above-styled action then pending in the Superior Court of California for the County of Los Angeles, Central District, in Case No. BC496104. Defendants were served on November 26, 2012.

2.

Pursuant to 28 U.S.C. §§1332, 1441, and 1446, and without prejudice to any defense that they may have to SGM's action, Defendants file this Notice of Removal based on diversity of citizenship.

3.

FUNimation Productions, Ltd. is a Texas Limited Partnership with its principal place of business in Flower Mound, Texas and is a citizen of the State of Texas.

4.

Gen Fukunaga is a domicile and citizen of the State of Texas.

5.

Chris Moujaes is a domicile and citizen of the State of Texas.

6.

Only the three Defendants filing this Notice of Removal have been served with process in this matter and are before the Court. These Defendants all have Texas citizenship; the Plaintiff is a citizen of California. Complete diversity therefore exists.

7.

"FUNimation Entertainment, Inc." is not a party before this Court. "Funimation Entertainment" is a d/b/a of FUNimation Productions, Ltd. There is no legal entity known as FUNimation Entertainment, Inc. It therefore has no citizenship for diversity purposes.

8.

Fun Music Project, LLC ("Fun Music") also is not before this Court. Fun Music was, or purported to be, a Delaware Limited Liability Company with its business address at the offices of National Registered Agents, Inc., in Dover, Delaware. Fun Music is not a corporation in good standing and has not been served with process in this case. If Fun Music were to be served with process (and

that is assuming that it is capable of being served), it would be a nominal defendant such that its citizenship is not relevant for diversity purposes. The only claim made against Fun Music is for Involuntary Dissolution under the Delaware Limited Liability Company Act.[1] No damages are sought against Fun Music and Fun Music has no interest in the outcome of the case. Because it would be a nominal defendant if were ever served, Fun Music's citizenship is not relevant. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000) (holding that a nominal defendant's citizenship is not relevant for purposes of assessing diversity jurisdiction); *see also Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 92–93 (2005) (providing that diversity jurisdiction is not affected if "a party was named to satisfy state pleading rules, or was joined only as designated performer of a ministerial act, or otherwise had no control of, impact on, or stake in the controversy"); *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").

---

[1] That claim is not cognizable in this Court or in any court outside of Delaware. An action to dissolve a Delaware Limited Liability Company must be brought in the Court of Chancery in Delaware. 6 Del. C. § 18-802. Thus, if either of the defendants named in that cause of action were before the Court, the Court would be bound to dismiss the claim for lack of subject matter jurisdiction and/or venue.

9.

The citizenship of defendants sued under fictitious names is not relevant for diversity purposes. 28 U.S.C. §1441(b)(1). The citizenship of the Doe defendants therefore is not relevant.

10.

Upon information and belief, SGM is a California Corporation with its principal place of business in Los Angeles County, California.

11.

Based upon Plaintiff's Complaint and demands, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, Plaintiff's claims involve claims for fraud, breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and involuntary dissolution. Plaintiff's complaint seeks compensatory damages alone in an amount in excess of $500,000. *See* Plaintiff's Complaint at ¶¶33, 38. Accordingly, the required jurisdictional amount is present.

12.

All served and properly joined defendants have consented to this Notice of Removal pursuant to 28 U.S.C. §1446(b)(2)(A). Unknown, nominal and fraudulently joined parties are not required to join in removal. *See United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756 (9th Cir. 2002); *Emrich v.*

*Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1988). Parties not served also are not required to join in removal. *Salveson v. Western States Bankcard Ass'n.*, 731 F.2d 1423, 1429 (9th Cir. 1984).

13.

Defendants were served with process on November 26, 2012. Thus, this Notice of Removal is timely pursuant to 28 U.S.C. §1446(b)(1).

14.

All conditions and procedures for removal have been satisfied. A filing fee is tendered herewith.

15.

Copies of the docket sheet and all pleadings, process, orders and other filings in the state-court suit are attached as Exhibit A and incorporated by reference to this notice, as required by 28 U.S.C. §1446(a).

16.

Venue is proper in this district under 28 U.S.C. §1441(a) because the state court where the suit has been pending is located in this district.

17.

Pursuant to 28 U.S.C. §1446(d), promptly after the filing of this Notice of Removal with this Court, Defendants will file a copy of the Notice of Removal with the clerk of court for the Superior Court of California for the County of Los

Angeles, Central District and will give prompt written notice to SGM as required by 28 U.S.C. §1446(d).

    WHEREFORE, Defendants remove this action to this Court.

DATED: December 21, 2012

NESBITT & NESBITT, LLP

By: _____
Paul B. Nesbitt, Esq.
Attorneys for Defendants
FUNimation Productions, Ltd. d/b/a FUNimation Entertainment, Gen Fukunaga and Chris Moujaes

GRODSKY & OLECKI LLP
Allen B. Grodsky (SBN 111064)
allen@grodsky-olecki.com
Zachary Rothenberg (SBN 215404)
zachary@grodsky-olecki.com
2001 Wilshire Boulevard, Suite 210
Santa Monica, California 90403
Telephone: (310) 315-3009
Facsimile: (310) 315-1557

Attorneys for Plaintiff
Smith Global Management, Inc.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

NOV 2 0 2012

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
Ishaylia Chambers

D28 Yvette M. Palazuelos

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| SMITH GLOBAL MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> GEN FUKUNAGA, FUNIMATION PRODUCTIONS, LTD. d/b/a FUNIMATION ENTERTAINMENT, FUNIMATION ENTERTAINMENT, INC., FUN MUSIC PROJECT, LLC, and CHRIS MOUJAES, and DOES 1 through 25. <br><br> Defendants. | Case No. **BC496104** <br><br> **COMPLAINT FOR FRAUD, BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND INVOLUNTARY DISSOLUTION** |

Plaintiff Smith Global Management, Inc. ("SGM"), as and for its Complaint against Defendants Gen Fukunaga ("Fukunaga"), FUNimation Productions, Ltd., d/b/a FUNimation Entertainment ("FP"), FUNimation Entertainment, Inc. ("FEI"), Fun Music Project, LLC ("Fun Music"), Chris Moujaes ("Moujaes"), and Does 1 through 25, allege as follows:

### INTRODUCTION

1. SGM is in the business of assisting high profile individuals and corporations in the expansion of their existing brands and businesses. As part of its business, SGM has experience in the development and production of music albums as well as connections with artists in the music industry. FP and FEI (collectively, "FUNimation Entertainment") wanted

ORIGINAL

Complaint

SGM to provide its expertise and to develop and produce music albums to be used on, and released in connection with, FUNimation Entertainment's anime DVDs. But FUNimation Entertainment did not want to pay fair value for SGM's services. Instead, its representatives, Fukunaga and Moujaes, made a series of false representations and concealed critical facts to fraudulently induce SGM to enter into a contract which called for the creation of a jointly-owned entity, Fun Music Project, to develop and produce these albums. Once the contract was executed and FUNimation Entertainment was able to obtain from SGM music for its DVDs and the skills and know-how needed to develop, produce, market, and distribute music albums, FUNimation Entertainment stopped complying with its obligations under the contract and, instead, used the information and skills it learned from SGM to secretly began to develop and produce its own albums to be sold in conjunction with the DVDs it distributed.

2. FUNimation Entertainment's actions constitute fraud and deceit, breach of its fiduciary duty, as well as breach of contract and breach of the implied covenant of good faith and fair dealing. As discussed in more detail below, SGM has been substantially damaged by the conduct of FUNimation Entertainment, Fukunaga, and Moujaes, and brings this suit to recover the damages incurred.

## THE PARTIES

3. SGM is a California Corporation with its principal place of business in Los Angeles County, California.

4. SGM is informed and believes, and thereon alleges, that FP is a Texas Limited Partnership with its principal place of business in Flower Mound, Texas. SGM is informed and believes, and thereon alleges, that FP operates under the fictitious business name "FUNimation Entertainment."

5. SGM is informed and believes, and thereon alleges, that FEI is an entity of unknown origin with its principal place of business in Flower Mound, Texas.

6. SGM is informed and believes, and thereon alleges, that Fukunaga is a

resident of Texas. SGM is further informed and believes, and thereon alleges, that Fukunaga is an owner of and is owner, officer, director, and/or manager of FP and FEI.

7. SGM is informed and believes, and thereon alleges, that Moujaes is a resident of the State of Texas. SGM is further informed and believes, and thereon alleges, that Moujaés is an officer and/or employee of FP and FEI.

8. SGM is informed and believes, and thereon alleges that Fun Music Project is a Delaware Corporation with its principal place of business in Los Angeles, California.

9. SGM is informed and believes, and thereon alleges that, at all times herein mentioned, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Fukunaga and FP, on the one hand, and FEI, on the other hand, such that any individuality and separateness between Fukunaga and FP, on the one hand, and FEI, on the other hand, has ceased, and Fukunaga and FP are the alter ego of FEI. SGM is further informed and believes, and thereon alleges, that Fukunaga and FP completely controlled, dominated, managed, and operated FEI to suit their convenience.

10. Further, SGM is informed and believes, and thereon alleges, that FEI is, now and at all times herein mentioned was, a mere shell, instrumentality and conduit through which Fukunaga and FP carried on their business exercising complete control and dominance of such business to such an extent that any individuality or separateness of Fukunaga and FP, on the one hand, and FEI, on the other hand, does not, and, at all times herein mentioned, did not exist.

11. The true names and capacities of the persons and entities named herein as Does 1 through 25, whether individual, corporate, associate, or otherwise, are presently unknown to SGM, who therefore sues these persons and entities by fictitious names. SGM will seek leave to amend this Complaint to show the true names and capacities of these Doe defendants when their identities have been ascertained or according to proof at trial.

12. SGM is informed and believes, and based thereon alleges, that at all times mentioned herein, each of the Defendants named herein, including these sued as Does 1 through 25, was the agent of each of the remaining Defendants, and in doing the things

hereinafter alleged, was acting within the course and scope of such agency and with the permission, consent of, and ratification by such Defendants.

## GENERAL ALLEGATIONS

13. In or around February 2011, representatives of SGM were introduced to Gen Fukunaga. FUNimation Entertainment was at that time in the business of distributing anime DVDs. SGM and Fukunaga began to discuss whether SGM could use SGM's expertise to help expand the business of FUNimation Entertainment.

14. In or around April or May 2011, SGM, on the one hand, and Fukunaga and FUNimation Entertainment, on the other hand, began to discuss working together such that SGM would use its expertise to develop music projects in connection with FUNimation Entertainment's high profile anime titles.

15. During these discussions and the subsequent negotiations for a written contract, Fukunaga represented on multiple occasions to both Craig Crossley and Harry Smith of SGM that:

- FUNimation Entertainment had the right to distribute music in connection with numerous anime titles, including but not limited to, Mass Effect, Dragon Age, Dragon Ball Z, One Piece, Fullmetal Alchemist, Witchblade, among others.
- FUNimation Entertainment had significant experience and capabilities with respect to marketing and distribution of music and that FUNimation had the ability to distribute music.

SGM is informed and believes, and thereon alleges, that Fukunaga made these representations in his capacity as an owner and/or manager of FUNimation Entertainment.

16. SGM is informed and believes, and thereon alleges, that Fukunaga's representations were false. SGM is informed and believes, and thereon alleges, that:

- FUNimation Entertainment did not have the right to distribute music in connection with Dragon Ball Z, One Piece, Fullmetal Alchemist, Witchblade, or any of the anime titles other than (possibly) Mass Effect and Dragon Age,

- FUNimation Entertainment did not have any, let alone significant, experience or capabilities with respect to marketing and distribution of music and did not have the ability to distribute music.

17. In actual and justifiable reliance on those representations, SGM agreed to enter into a contract with FUNimation Entertainment, which was executed by the parties as of September 14, 2011. The contract stated in the first paragraph that it was entered into between SGM and "FUNimation Entertainment" (without any "inc."). The title of the contract, though, is called "Smith Global, Inc./FUNimation Entertainment, Inc. Term Sheet" and the signature block (signed by Gen. Fukunaga) is for FUNimation Entertainment, Inc. SGM is informed and believes, and thereon alleges, that there is no properly formed corporation with the name FUNimation Entertainment, Inc. At no time did FUNimation Enteratinment or its representatives tell SGM that FUNimation Entertainment, Inc. was not a properly formed corporation.

18. The September 14, 2011 agreement (the "Agreement") provided, in pertinent part:

- The parties were to create a new entity, jointly managed by SGM and FUNimation Entertainment, for the sole purpose of producing a music album and a select number of music videos, the songs of which would be based on or inspired by FUNimation Entertainment anime properties. SGM was to own 40% of that company's equity and FUNimation Entertainment was to receive 60% of that company's equity.

- FUNimation was to provide funds in the amount of $905,625 as a budget to fund production and marketing of the music album.

- FUNimation was to distribute the album (for which it would receive an aggressive fee of 25% of gross receipts) and to provide a Marketing Plan and a Distribution Plan.

- SGM was to manage the development, production, and post-production process for the album and videos, and to provide input on marketing and

Complaint

-5-

distribution strategies, in exchange for which it was to receive 15% of the budget of the album as a producer's fee.

19. SGM is informed and believes, and thereon alleges, that FP, FEI, Fukunaga, and Moujaes (collectively, the "FUNimation Defendants") never intended for FUNimation Entertainment to perform its obligations under the Agreement. To the contrary, SGM is informed and believes, and thereon alleges that:

- The FUNimation Defendants never intended for FUNimation Entertainment to fund the full $905,625;
- The FUNimation Defendants, knowing that FUNimation Entertainment did not have the ability to distribute music, intended to have SGM show them how to obtain music distribution.
- The FUNimation Defendants intended to have SGM use its contacts and skills to find known artists who would provide music to be used on FUNimation Entertainment DVDs.
- The FUNimation Defendants never intended to have FUNimation Entertainment prepare a marketing or distribution plan because they were not qualified or capable of doing so.
- The FUNImation Defendants also intended to have SGM teach them how to produce and market music to release in connection with anime DVDs, and how to legally structure deals with artists, labels, and publishers.
- Once the FUNimation Defendants learned how to produce and market music, they intended to stop funding the project, and instead devote their time and energy to producing and marketing music on their own and to cut SGM out of the profits.

20. SGM relied on these representations and concealment of material facts and, would never have entered into the Agreement had it known the true facts misrepresented and concealed by the FUNimation Defendants.

21. On or about October 6, 2011, SGM, pursuant to the Agreement, caused to be

Complaint

-6-

formed a new Delaware Limited Liability Company called Fun Music Project, LLC ("Fun Music"), with its principal place of business in Los Angeles County, California. Defendant FP provided the initial funding for this entity. SGM caused to be prepared an Operating Agreement between SGM and FEI and provided that draft agreement to the FUNimation Defendants. The FUNimation Defendants repeatedly delayed in providing comments on that agreement and, again, did not tell SGM that FEI was not a properly formed corporation.

22. Following entry of the Agreement, Fukunaga and Moujaes, on behalf of FEI and FP, continued to misrepresent that FUNimation Entertainment had the right to distribute music in connection with top anime DVDs such as Dragon Ball Z, One Piece, Fullmetal Alchemist, Witchblade, when FEI and FP had no such right. For example:

- During the "kick off meeting," Fukunaga again insisted that SGM focus its efforts on the top five anime titles, which included Dragon Ball Z, One Piece, and Fullmetal Alchemist, but concealed that FUNimation Entertainment had no right to distribute music in connection with those titles;
- Moujaes repeatedly pushed SGM to procure top artists for FUNimation Entertainment's "A-List" DVD titles, which included Dragon Ball Z, One Piece, Fullmetal Alchemist, and Witchblade. Again, Moujaes concealed from SGM that FUNimation Entertainment had no right to distribute music in connection with those titles;
- On December 3, 2011, Fukunaga, as President and CEO of FUNimation Entertainment, sent a letter to Harry Smith of SGM in California formally authorizing SGM "to procure music artists, producers, DJ's and any other professionals required . . . [in connection with] an album and select number of music videos inspired by several of FUNimation's internationally successful anime titles." The letter listed those titles as, among others, Dragon Ball Z, One Piece, Fullmetal Alchemist, and Witchblade. In fact, at this time, FUNimation Entertainment did not have the right to sell music in connection with these titles.

23. In actual and justifiable reliance on Fukunaga's misrepresentations, SGM developed music for these titles and a release plan for the titles was approved. In addition, SGM created a music division for Fun Music Project and, in so doing, formally laid out an entire plan and program for creating and distributing music in connection with anime DVDs. Between November 14, 2011 and July 1, 2012, Smith and Crossley of SGM invested significant time on developing the business, three to four months of which consisted of working full time on the album project. This included finding distribution for the company, given that FUNimation had no access to music distribution. SGM also located high profile artists who would provide their music for use on FUNimation Entertainment's DVDs (with the understanding that the same music would be released on music albums in which SGM would share the profits). The reasonable value of services provided by SGM in connection with the Agreement exceeds $350,000.

24. Had SGM known that the representations made by the FUNimation Defendants were false and of the truth of the material facts concealed, it would not have spent substantial amounts of time finding artists for DVD titles, producing music and developing the overall business. Furthermore, had SGM known of the true facts it would not have revealed to SGM its knowhow and other information relating to the development and production of music albums.

25. As of the date of this Complaint, FUNimation Entertainment has funded only approximately $450,000 of the $905,625 it agreed to fund. FUNimation Entertainment has failed to provide a marketing plan or a distribution plan and utterly failed to provide distribution for the project. Moujaes has also announced that FUNimation Entertainment did not wish to move forward with the project because a music company was "not a viable business."

26. At the same time FUNimation Entertainment stopped funding the project and told SGM that a music company was not a viable business, the FUNimation Defendants used what they had learned from the work done by SGM to secretly produce their own album to be distributed in connection with the DVD "Mass Effect: Paragon Lost." The

album is scheduled to be released on November 29, 2012.

## FIRST CAUSE OF ACTION

(Fraud and Fraudulent Concealment)

[Against All Defendants except Fun Music Project]

27. SGM realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 26, inclusive as set forth herein.

28. SGM is informed and believes, and thereon alleges, that the alleged representations made by FP, FEI, Fukunaga, Moujaes, and Does 1 through 25 were false. SGM is informed and believes, and thereon alleges, that, at the time these Defendants made these representations, they knew them to be false.

29. SGM is informed and believes, and thereon alleges, that FP, FEI, Fukunaga, Moujaes, and Does 1 through 25 concealed the true facts (as described above) in order to further its plan of convincing SGM to enter into the contract and then provide substantial services under the Agreement which would show these Defendants how to produce and distribute music albums.

30. SGM is informed and believes, and thereon alleges, that these representations were made, and material facts were concealed, with the intention and for the purpose of inducing SGM to enter into the Agreement and to reveal to these Defendants SGM's knowhow and information on developing, producing, marketing, and distributing music albums and music videos.

31. These defendants' representations, and the concealed matters, were material to SGM's decision to enter into the Agreement. Had SGM known the actual facts, SGM would not have entered into the Agreement and would not have revealed its knowhow or other information on developing and producing music albums.

32. SGM's reliance on these Defendants' representations was reasonable at the time such representations occurred. Indeed, SGM is informed and believes, and thereon alleges, that these Defendants intended that SGM would act upon the non-disclosures by

-9-

Complaint

entering into the Agreement.

33. As a result of these Defendants' fraudulent misrepresentations and concealment, SGM suffered, and continues to suffer, damages. SGM is informed and believes, and thereon alleges, that the amount of such damage is in excess of $500,000.

34. SGM is informed and believes, and thereon alleges, that these Defendants' actions were undertaken with fraud, oppression, and malice. Punitive damages in an amount according to proof should therefore be awarded against these Defendants.

### SECOND CAUSE OF ACTION

(For Breach of Fiduciary Duty)

(Against FP, FEI, Fukunaga, and Does 1 through 25)

35. SGM realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 27, inclusive as set forth herein.

36. As joint managers of Fun Music Project, FP, FEI, Fukunaga, and Does 1 through 25 owed a fiduciary duty to SGM.

37. Based on the above-described conduct, FP, FEI, Fukunaga, and Does 1 through 25 have breached their fiduciary duty.

38. As a direct and proximate result of the above-described conduct, SGM has been damaged in an amount in excess of $500,000.

39. SGM is informed and believes, and thereon alleges, that these Defendants' actions were undertaken with fraud, oppression, and malice. Punitive damages in an amount according to proof should therefore be awarded against these Defendants.

### THIRD CAUSE OF ACTION

(For Breach of Contract)

[Against FP, FEI, Fukunaga, and Does 1 through 25]

40. SGM realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 27, inclusive as set forth herein.