**FILED**
CLERK, U.S. DISTRICT COURT

Nov 20, 2013

CENTRAL DISTRICT OF CALIFORNIA
BY:   CMJ   DEPUTY

1   GRODSKY & OLECKI LLP
Allen B. Grodsky (SBN 111064)
2   *allen@grodsky-olecki.com*
Zachary Rothenberg (SBN 215404)
3   *zachary@grodsky-olecki.com*
2001 Wilshire Boulevard, Suite 210
4   Santa Monica, California 90403
Telephone:  (310) 315-3009
5   Facsimile: (310) 315-1557

6   Attorneys for Plaintiff
Smith Global Management, Inc.
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   SMITH GLOBAL MANAGEMENT, INC., )   Case No.  CV12-10935 CAS (PJWx)
                                    )
12              Plaintiff,          )
                                    )
13        v.                        )   [PROPOSED] **FIRST AMENDED**
                                    )   **COMPLAINT FOR FRAUD,**
14   FUNIMATION PRODUCTIONS, LTD.   )   **BREACH OF FIDUCIARY DUTY,**
     d/b/a FUNIMATION ENTERTAINMENT,)   **BREACH OF CONTRACT,**
15   FUNIMATION ENTERTAINMENT,      )   **BREACH OF THE IMPLIED**
     INC., FUN MUSIC PROJECT, LLC, and)  **COVENANT OF GOOD FAITH**
16   DOES 1 through 25.             )   **AND FAIR DEALING, AND**
                Defendants.         )   **INVOLUNTARY DISSOLUTION**
17   _____   )

18        Plaintiff Smith Global Management, Inc. ("SGM"), as and for its Complaint

19   against Defendants FUNimation Productions, Ltd., d/b/a FUNimation Entertainment

20   ("FP"), FUNimation Entertainment, Inc. ("FEI"), Fun Music Project, LLC ("Fun

21   Music"), and Does 1 through 25, allege as follows:

22

23                        **INTRODUCTION**

24        1.    SGM is in the business of assisting high profile individuals and

25   corporations in the expansion of their existing brands and businesses.  As part of its

26   business, SGM has experience in the development and production of music albums as

27   well as connections with artists in the music industry.  FP and FEI (collectively,

28   "FUNimation Entertainment") wanted SGM to provide its expertise and to develop

1  and produce music albums to be used on, and released in connection with,

2  FUNimation Entertainment's anime DVDs.  But FUNimation Entertainment did not

3  want to pay fair value for SGM's services.  Instead, its representatives made a series of

4  false representations and concealed critical facts to fraudulently induce SGM to enter

5  into a contract which called for the creation of a jointly-owned entity, Fun Music

6  Project, to develop and produce these albums.  Once the contract was executed and

7  FUNimation Entertainment was able to obtain from SGM music for its DVDs and the

8  skills and know-how needed to develop, produce, market, and distribute music

9  albums, FUNimation Entertainment stopped complying with its obligations under the

10  contract and, instead, used the information and skills it learned from SGM to secretly

11  began to develop and produce its own albums to be sold in conjunction with the

12  DVDs it distributed.

13      2.    FUNimation Entertainment's actions constitute fraud and deceit, breach

14  of its fiduciary duty, as well as breach of contract and breach of the implied covenant

15  of good faith and fair dealing.  As discussed in more detail below, SGM has been

16  substantially damaged by the conduct of FUNimation Entertainment and brings this

17  suit to recover the damages incurred.

18

19  **THE PARTIES**

20      3.    SGM is a California Corporation with its principal place of business in

21  Los Angeles County, California.

22      4.    SGM is informed and believes, and thereon alleges, that FP is a Texas

23  Limited Partnership with its principal place of business in Flower Mound, Texas.

24  SGM is informed and believes, and thereon alleges, that FP operates under the

25  fictitious business name "FUNimation Entertainment."

26      5.    SGM is informed and believes, and thereon alleges, that FEI is an entity

27  of unknown origin with its principal place of business in Flower Mound, Texas.

28      6.    SGM is informed and believes, and thereon alleges that Fun Music

1  Project is a Delaware Corporation with its principal place of business in Los Angeles,
2  California.

3        7.    SGM is informed and believes, and thereon alleges that, at all times
4  herein mentioned, there exists, and at all times herein mentioned there existed, a unity
5  of interest and ownership between FP and FEI, such that any individuality and
6  separateness between FP and FEI has ceased, and FP is the alter ego of FEI. SGM is
7  further informed and believes, and thereon alleges, that FP completely controlled,
8  dominated, managed, and operated FEI to suit its convenience.

9        8.    Further, SGM is informed and believes, and thereon alleges, that FEI is,
10  now and at all times herein mentioned was, a mere shell, instrumentality and conduit
11  through which FP carried on its business exercising complete control and dominance
12  of such business to such an extent that any individuality or separateness of FP and FEI
13  does not, and, at all times herein mentioned, did not exist.

14        9.    The true names and capacities of the persons and entities named herein as
15  Does 1 through 25, whether individual, corporate, associate, or otherwise, are
16  presently unknown to SGM, who therefore sues these persons and entities by fictitious
17  names.  SGM will seek leave to amend this First Amended Complaint to show the true
18  names and capacities of these Doe defendants when their identities have been
19  ascertained or according to proof at trial.

20       10.    SGM is informed and believes, and based thereon alleges, that at all times
21  mentioned herein, each of the Defendants named herein, including these sued as Does
22  1 through 25, was the agent of each of the remaining Defendants, and in doing the
23  things hereinafter alleged, was acting within the course and scope of such agency and
24  with the permission, consent of, and ratification by such Defendants.

25
26                    **GENERAL ALLEGATIONS**

27       11.    In or around February 2011, representatives of SGM were introduced to
28  representatives of FUNimation Entertainment.  FUNimation Entertainment was at that

1    time in the business of distributing anime DVDs. SGM and those representatives

2    began to discuss whether SGM could use SGM's expertise to help expand the

3    business of FUNimation Entertainment.

4         12.    In or around April or May 2011, SGM, on the one hand, FUNimation

5    Entertainment, on the other hand, began to discuss working together such that SGM

6    would use its expertise to develop music projects in connection with FUNimation

7    Entertainment's high profile anime titles.

8         13.    During these discussions and the subsequent negotiations for a written

9    contract, representatives of FUNimation Entertainment represented on multiple

10   occasions to both Craig Crossley and Harry Smith of SGM that:

11        •    FUNimation Entertainment had the right to distribute music in connection

12             with numerous anime titles, including but not limited to, Mass Effect,

13             Dragon Age, Dragon Ball Z, One Piece, Fullmetal Alchemist,

14             Witchblade, among others.

15        •    FUNimation Entertainment had significant experience and capabilities

16             with respect to marketing and distribution of music and that FUNimation

17             had the ability to distribute music.

18   SGM is informed and believes, and thereon alleges, that they made these

19   representations in their capacities as representatives of FUNimation Entertainment.

20        14.    SGM is informed and believes, and thereon alleges, that these

21   representations were false. SGM is informed and believes, and thereon alleges, that:

22        •    FUNimation Entertainment did not have the right to distribute music in

23             connection with Dragon Ball Z, One Piece, Fullmetal Alchemist,

24             Witchblade, or any of the anime titles other than (possibly) Mass Effect

25             and Dragon Age,

26        •    FUNimation Entertainment did not have any, let alone significant,

27             experience or capabilities with respect to marketing and distribution of

28             music and did not have the ability to distribute music.

-4-

15.     In actual and justifiable reliance on those representations, SGM agreed to enter into a contract with FUNimation Entertainment, which was executed by the parties as of September 14, 2011.  The contract stated in the first paragraph that it was entered into between SGM and "FUNimation Entertainment" (without any "inc."). The title of the contract, though, is called "Smith Global, Inc./FUNimation Entertainment, Inc. Term Sheet" and the signature block is for FUNimation Entertainment, Inc.  SGM is informed and believes, and thereon alleges, that there is no properly formed corporation with the name FUNimation Entertainment, Inc.  At no time did FUNimation Enteratinment or its representatives tell SGM that FUNimation Entertainment, Inc. was not a properly formed corporation.

16.     The September 14, 2011 agreement (the "Agreement") provided, in pertinent part:

- The parties were to create a new entity, jointly managed by SGM and FUNimation Entertainment, for the sole purpose of producing a music album and a select number of music videos, the songs of which would be based on or inspired by FUNimation Entertainment anime properties. SGM was to own 40% of that company's equity and FUNimation Entertainment was to receive 60% of that company's equity.
- FUNimation was to provide funds in the amount of $905,625 as a budget to fund production and marketing of the music album.
- FUNimation was to distribute the album (for which it would receive an aggressive fee of 25% of gross receipts) and to provide a Marketing Plan and a Distribution Plan.
- SGM was to manage the development, production, and post-production process for the album and videos, and to provide input on marketing and distribution strategies, in exchange for which it was to receive 15% of the budget of the album as a producer's fee.

17.     SGM is informed and believes, and thereon alleges, that FP and FEI

(collectively, the "FUNimation Defendants") never intended for FUNimation Entertainment to perform its obligations under the Agreement. To the contrary, SGM is informed and believes, and thereon alleges that:

- The FUNimation Defendants never intended for FUNimation Entertainment to fund the full $905,625;

- The FUNimation Defendants, knowing that FUNimation Entertainment did not have the ability to distribute music, intended to have SGM show them how to obtain music distribution.

- The FUNimation Defendants intended to have SGM use its contacts and skills to find known artists who would provide music to be used on FUNimation Entertainment DVDs.

- The FUNimation Defendants never intended to have FUNimation Entertainment prepare a marketing or distribution plan because they were not qualified or capable of doing so.

- The FUNImation Defendants also intended to have SGM teach them how to produce and market music to release in connection with anime DVDs, and how to legally structure deals with artists, labels, and publishers.

- Once the FUNimation Defendants learned how to produce and market music, they intended to stop funding the project, and instead devote their time and energy to producing and marketing music on their own and to cut SGM out of the profits.

18.   SGM relied on these representations and concealment of material facts and, would never have entered into the Agreement had it known the true facts misrepresented and concealed by the FUNimation Defendants.

19.   On or about October 6, 2011, SGM, pursuant to the Agreement, caused to be formed a new Delaware Limited Liability Company called Fun Music Project, LLC ("Fun Music"), with its principal place of business in Los Angeles County, California. Defendant FP provided the initial funding for this entity. SGM caused to be prepared

an Operating Agreement between SGM and FEI and provided that draft agreement to the FUNimation Defendants. The FUNimation Defendants repeatedly delayed in providing comments on that agreement and, again, did not tell SGM that FEI was not a properly formed corporation.

20.      Following entry of the Agreement, FEI and FP continued to misrepresent that FUNimation Entertainment had the right to distribute music in connection with top anime DVDs such as Dragon Ball Z, One Piece, Fullmetal Alchemist, Witchblade, when FEI and FP had no such right. For example:

- During the "kick off meeting," FUNimation's representatives again insisted that SGM focus its efforts on the top five anime titles, which included Dragon Ball Z, One Piece, and Fullmetal Alchemist, but concealed that FUNimation Entertainment had no right to distribute music in connection with those titles;

- FUNimation's representatives repeatedly pushed SGM to procure top artists for FUNimation Entertainment's "A-List" DVD titles, which included Dragon Ball Z, One Piece, Fullmetal Alchemist, and Witchblade. Again, the FUNimation Defendants concealed from SGM that FUNimation Entertainment had no right to distribute music in connection with those titles;

- On December 3, 2011, a representative of FUNimation Entertainment, sent a letter to Harry Smith of SGM in California formally authorizing SGM "to procure music artists, producers, DJ's and any other professionals required . . . [in connection with] an album and select number of music videos inspired by several of FUNimation's internationally successful anime titles:" The letter listed those titles as, among others, Dragon Ball Z, One Piece, Fullmetal Alchemist, and Witchblade. In fact, at this time, FUNimation Entertainment did not have the right to sell music in connection with these titles.

21.    In actual and justifiable reliance on the FUNimation Defendants'
misrepresentations, SGM developed music for these titles and a release plan for the
titles was approved.  In addition, SGM created a music division for Fun Music Project
and, in so doing, formally laid out an entire plan and program for creating and
distributing music in connection with anime DVDs.  Between November 14, 2011 and
July 1, 2012, Smith and Crossley of SGM invested significant time on developing the
business, three to four months of which consisted of working full time on the album
project.  This included finding distribution for the company, given that FUNimation
had no access to music distribution.  SGM also located high profile artists who would
provide their music for use on FUNimation Entertainment's DVDs (with the
understanding that the same music would be released on music albums in which SGM
would share the profits).  The reasonable value of services provided by SGM in
connection with the Agreement exceeds $350,000.

22.    Had SGM known that the representations made by the FUNimation
Defendants were false and of the truth of the material facts concealed, it would not
have spent substantial amounts of time finding artists for DVD titles, producing music
and developing the overall business.  Furthermore, had SGM known of the true facts it
would not have revealed to SGM its knowhow and other information relating to the
development and production of music albums.

23.    As of the date of this pleading, FUNimation Entertainment has funded
only approximately $450,000 of the $905,625 it agreed to fund.  FUNimation
Entertainment has failed to provide a marketing plan or a distribution plan and utterly
failed to provide distribution for the project.  FUNimation Entertainment announced
that it did not wish to move forward with the project because a music company was
"not a viable business."

24.    At the same time FUNimation Entertainment stopped funding the project
and told SGM that a music company was not a viable business, the FUNimation
Defendants used what they had learned from the work done by SGM to secretly

produce their own album to be distributed in connection with the DVD "Mass Effect: Paragon Lost."  The album was scheduled to be released on November 29, 2012.

## FIRST CAUSE OF ACTION

(Fraud and Fraudulent Concealment)

[Against All Defendants except Fun Music Project]

25.   SGM realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 24, inclusive as set forth herein.

26.   SGM is informed and believes, and thereon alleges, that the alleged representations made by FP, FEI, and Does 1 through 25 were false.  SGM is informed and believes, and thereon alleges, that, at the time these Defendants made these representations, they knew them to be false.

27.   SGM is informed and believes, and thereon alleges, that FP, FEI, and Does 1 through 25 concealed the true facts (as described above) in order to further its plan of convincing SGM to enter into the contract and then provide substantial services under the Agreement which would show these Defendants how to produce and distribute music albums.

28.   SGM is informed and believes, and thereon alleges, that these representations were made, and material facts were concealed, with the intention and for the purpose of inducing SGM to enter into the Agreement and to reveal to these Defendants SGM's knowhow and information on developing, producing, marketing, and distributing music albums and music videos.

29.   These defendants' representations, and the concealed matters, were material to SGM's decision to enter into the Agreement.  Had SGM known the actual facts, SGM would not have entered into the Agreement and would not have revealed its knowhow or other information on developing and producing music albums.

30.   SGM's reliance on these Defendants' representations was reasonable at the time such representations occurred.  Indeed, SGM is informed and believes, and

1   thereon alleges, that these Defendants intended that SGM would act upon the non-

2   disclosures by entering into the Agreement.

3       31.   As a result of these Defendants' fraudulent misrepresentations and

4   concealment, SGM suffered, and continues to suffer, damages.  SGM is informed and

5   believes, and thereon alleges, that the amount of such damage is in excess of

6   $500,000.

7       32.   SGM is informed and believes, and thereon alleges, that these

8   Defendants' actions were undertaken with fraud, oppression, and malice.  Punitive

9   damages in an amount according to proof should therefore be awarded against these

10  Defendants.

11

12                      **SECOND CAUSE OF ACTION**

13                      (For Breach of Fiduciary Duty)

14                 (Against FP, FEI, and Does 1 through 25)

15      33.   SGM realleges and incorporates by reference each and every allegation

16  set forth in Paragraphs 1 through 24, inclusive as set forth herein.

17      34.   As joint managers of Fun Music Project, FP, FEI, and Does 1 through 25

18  owed a fiduciary duty to SGM.

19      35.   Based on the above-described conduct, FP, FEI, and Does 1 through 25

20  have breached their fiduciary duty.

21      36.   As a direct and proximate result of the above-described conduct, SGM

22  has been damaged in an amount in excess of $500,000.

23      37.   SGM is informed and believes, and thereon alleges, that these

24  Defendants' actions were undertaken with fraud, oppression, and malice.  Punitive

25  damages in an amount according to proof should therefore be awarded against these

26  Defendants.

27

28

                               -10-

**THIRD CAUSE OF ACTION**

(For Breach of Contract)

[Against FP, FEI, and Does 1 through 25]

38.    SGM realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 24, inclusive as set forth herein.

39.    SGM has performed all of the terms and conditions required by the Agreement other than those excused by Defendants or for which Defendants are estopped to assert any nonperformance.

40.    FP, FEI, and Does 1 through 25 have breached the Agreement by, among other things:

- Failing to provide a marketing plan or a distribution plan;
- Failing to obtain distribution for the album;
- Failing to fully fund the project;
- Unilaterally deciding to shut down the album project.

41.    As a direct and proximate result of the above-described conduct, SGM has suffered damages according to proof.

**FOURTH CAUSE OF ACTION**

(For Breach of the Implied Covenant of Good Faith and Fair Dealing)

[Against FP, FEI, and Does 1 through 25]

42.    SGM realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 24 and 40, inclusive as set forth herein.

43.    FP, FEI, and Does 1 through 25 have breached the implied covenant of good faith and fair dealing by engaging in bad faith conduct intended to frustrate SGM's rights to receive the benefits of the Agreement.  These Defendants have breached the implied covenant of good faith and fair dealing by, among other things: (1) unilaterally shutting down the album project; (2) refusing to allow the name "Funimusic" to be used in connection with the branding project after approving use of

the name and after SGM spent countless hours working to develop the brand; and (3) failing to include information on DVD packaging as to where consumers could purchase the music contained in the DVD.

44.     As a direct and proximate result of this breach of the implied covenant of good faith and fair dealing, SGM has suffered damages in an amount according to proof.

## FIFTH CAUSE OF ACTION

(For Involuntary Dissolution)

[Against Fun Music Project and FEI]

45.     SGM realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 through 24, inclusive as set forth herein.

46.     Fun Music Project should be dissolved because, among other things, it is not reasonably practicable to carry on the business in conformity with the articles of organization, it is reasonably necessary to protect the rights and interests of SGM, and management is deadlocked or subject to internal dissention.

WHEREFORE SGM prays for judgment against Defendants as follows:

1.     For compensatory damages in an amount in excess of $500,000;

2.     For punitive damages in an amount according to proof;

3.     For an involuntary dissolution of Fun Music Project;

4.     For costs of suit; and

5.     For such other and further relief as the Court may deem just and proper.

Dated:  November 1, 2013

GRODSKY & OLECKI LLP
Allen B. Grodsky
Zachary Rothenberg

By: _____
      Allen B. Grodsky

Attorneys for Plaintiff and
Counterdefendant Smith Global
Management, Inc.

-12-